No. 65, Orig.  TEXAS *v.* NEW MEXICO.  Motion of the Special Master for allowance of interim fees and disbursements granted. JUSTICE STEVENS took no part in the consideration or decision of this motion.  [For earlier order herein, see, *e. g.,* 484 U. S. 973.]

JUSTICE BLACKMUN, dissenting.

Charles J. Meyers, formerly the dean of Stanford Law School and now a partner in the Denver branch of Gibson, Dunn & Crutcher, a large Los Angeles law firm, on July 2, 1984, was appointed by this Court, see 468 U. S. 1202, to succeed the Honorable Jean S. Breitenstein, Senior Judge of the United States Court of Appeals for the Tenth Circuit and since deceased, as Special Master in this litigation between Texas and New Mexico.

In December 1985, the successor Master filed an application for interim fees of $33,511 and for reimbursement of expenses of $702.09, a total of $34,213.09.  That request was granted by the Court over three dissenting votes.  See 475 U. S. 1004 (1986). Chief Justice Burger, writing for the dissenters, complained about Master Meyers' omission of "any information concerning the experience levels of the four attorneys for whose services he seeks to charge"; about the absence of any statement that the four even were members of the Bar; and about the lack of information as to hourly rates charged.  *Ibid.*  The Chief Justice cited his corresponding dissent to the allowance of compensation requested by this same applicant as Master in *Louisiana* v. *Mississippi,* 466 U. S. 921 (1984).  He repeated his earlier observation that a Special Master's charges, when allowed by the Court, "'represent our assurance to the parties that the charges are reasonable and proper,'" and that this is so even where "the parties do not oppose the application."  475 U. S., at 1004.  The Chief Justice also

noted: "'I believe the public service aspect of the appointment is a factor that is not to be wholly ignored in determining the reasonableness of fees charged in a case like this.'" He stated: "The contending litigants have a right to expect this Court to exercise its independent judgment on fees rather than requiring each or both of them to challenge the amounts." *Id.*, at 1005.

In September 1986, this Special Master once again moved for interim fees, this time for an amount totaling $69,608.50. The Court granted that motion as well. 479 U. S. 806 (1986).

The present application for more interim fees and for reimbursement of expenses was filed January 11, 1988. Master Meyers now requests $69,661.25 in fees and $2,544.37 for expenses, a total of $72,205.62. He says that these amounts are those incurred since the interim allowance of $69,608.50 in late 1986.

The applicant attaches a computer printout to his motion. He asserts that nearly all the work during this period was performed either by him or by Diana Poole, "who has replaced Steven Crafton as my law clerk on this matter"; that clerk Crafton left the Denver office of the firm in August 1986; and that Ms. Poole assumed her duties in July 1987 and, revealingly, "expended considerable effort in the early months mastering the background of the case before commencing research on the issues arising in devising a decree."

The Master points out once again that he is a partner in his law firm and is head of its "Natural Resources Group"; that he received his law degree from the University of Texas and his master's and doctoral degrees from Columbia University; and that he has taught at Texas, Columbia, and Stanford, and was dean of Stanford Law School for five years. He states that Ms. Poole received her law degree in 1983 from the University of Minnesota, where she was an editor of the Law Review, and that she now is an associate (nonpartner) lawyer in his firm's Denver office. She worked for one year as a law clerk for Judge Myron H. Bright of the United States Court of Appeals for the Eighth Circuit, and "has been in private practice for over three years."

The Master requests compensation for his time at a "weighted average" of $275.12 per hour. He requests compensation at a "weighted average" of $181.30 per hour for the time of Ms. Poole. He says that he spent 85.25 hours on the case; that Ms. Poole spent 246.25 hours; and that small additional amounts of time were ex-

pended by former clerk Crafton and by one L. A. O'Neill, who, for all we know, may have been a paralegal and not a lawyer.

It seems apparent—indeed the Master so concedes when he describes the nature of the "early months" of her work on the case—that a substantial amount of Ms. Poole's time was self-education as to the issues and was duplicative background work already performed by former clerk Crafton who had left the Denver office. The consequences of Crafton's departure hardly are to be charged to these litigants. It also is difficult for me to accept the fact that in Denver, Colorado, this partner's time is now worth $290 an hour, having been increased from $265 on November 1, 1987, and that the time of Ms. Poole is now worth $200 an hour, having been elevated from $170 beginning November 1, 1987. Ms. Poole, after all, was only four years out of law school and only three years in practice. I cannot agree that so recent a law school graduate, no matter how inherently bright she may be, of such limited experience can be said to be worth that amount in a case the retired Chief Justice described as possessing a "public service aspect."

This Court does have a duty to the public and to the parties when it approves a Master's request for fees. The fact that the two States which are the parties to this litigation have not lodged specific objections to the fees is of no great relevance. The States, after all, are parties and are consigned in their continuing litigation to this same Master.

I would reduce the request for interim fees from the asserted amount of $69,661.25 to $50,000 to reflect both a reasonable amount of time necessarily expended and realistic charges. I would also reduce the request for reimbursement for expenses by $240, an amount described as having been paid for secretarial overtime. There is no explanation proffered by Master Meyers as to why this overtime was necessary. He can and should be more specific in his accounting to this Court.

I add that it seems to me that "establishment" law firms are doing themselves and the public a disservice by asserting fees of this magnitude so persistently over dissents from the Court. Public dissatisfaction with lawyers is not unknown; neither is public distrust of lawyers. A fee application of this kind tends to build that dissatisfaction and that distrust.

It is enlightening, incidentally, to compare with this application the fees recently charged by two very distinguished lawyers who

served this Court as Special Masters on other similar assignments. See *South Carolina* v. *Baker*, 484 U. S. 973 (1987), and *Kansas* v. *Colorado, ante*, p. 931.

I dissent.